Case No. 17-3042, James J. Dury III, is able to take the jury for separation of trust, and Jack Luke and James T. O'Donnell v. Village of Barrington Hills. You may notice there are only two of us here today. The third member of our panel is Justice Fitzgerald Smith. He was called away on a family emergency, so we send his apologies. He will be listening to the oral argument on tape. To that end, when you are arguing today, ladies and gentlemen, that microphone is actually not for amplification, it's for recording purposes, so please try to speak as clearly as you can so we give Justice Fitzgerald Smith a good recording. Will the attorneys presenting arguments today please approach the bench and introduce yourselves? Your Honor, I'm Thomas Boone, and I'm representing the affiliates in this matter. Can you spell your last name please? B-U-R-N-E-Y. Thank you. Your Honor, Patrick Fyne, B-O-N-D. I'm here at the Village of Barrington Hills, defending the case. Good morning, Mr. Boone. James Kelly, Your Honor, on behalf of Dury, McCobb, Kathleen, McCobb, John Pappas, Barrington Hills Polo Club, Barbara McMorris, Victoria Kelly, and Marina Casquese Bernardi. Does that cover all the interveners? No, Your Honor. Okay. All right. Good morning, Your Honor. Ruth Winterholt, Bradley Atkinson, Reginer, Barrington Hills Farm. Okay. I'm sorry, your last name? Winterholt, Ruth Winterholt. Thank you. So there was a previous discussion about the separating of oral argument. I think we have a somewhat unusual location. The Village is an appellee, but I think that your interests are a bit more aligned with the appellant, at least in terms of your arguments today. We did allow equal time. The first thing I want to tell you is everyone is going to get a chance to argue what they need to argue today. We will have some general time parameters, but we have no intention of cutting you off if we're in the middle of something that's meaningful. My thought was 20 minutes for the appellant with some time for rebuttal, I assume. That's fine. And then I thought 10 for the Village and 10 for the intervenors. Were the two intervenors planning on each arguing? We discussed very different issues. You were going to split issues. Can you explain that? Yes, Judge. I think one of us would be taking certain issues that they've worked on more aggressively. Which issues? The first judge, Justice Rutherford, we don't know what the questions will be for the court. I assume that the appellant in front of us will be arguing settlement? We intend to address that later. Okay. All right. And I'll be addressing the issue of the retroactivity and the facial. Facial challenge? Okay. All right. Well, we will obviously start with the appellant. And then Mr. Bond, if you want to go second, we'll give you 10 minutes. And again, you know, we can be flexible with the time. And then how are you two, Mr. Kelly and Ms. Winterhalter, who's going to go first? Okay. That sounds fine. All right. Mr. Bernie, when you're ready. Thank you. Your Honor, may it please the court, as I've indicated earlier, my name is Thomas Bernie. I'm representing all of the appellants in this matter. We're here before you on an appeal of the trial court's order. There's three orders we're appealing. The first was refusing to enter the settlement agreement, failing to enter the settlement agreement that was entered into between the village and all of the appellants. The second was dismissing the complaint under 2615. And then the third was denying the motion to dismiss. We are here requesting you to remand this matter back to the trial court judge with directions to sign the settlement agreement. We request early the alternative to remand it back to the trial court judge to reinstate the complaint and to have further proceedings consistent with the decision of this court. All of the plaintiffs, the appellants here, are property owners and residents of the village of Burrington Hills. The complaint deals with the adoption by the then village board of the 2015 ordinance, which is what I'm going to be calling it, the 2015 ordinance, because there's a 2006 ordinance. It's like a 2015 ordinance and a 2016 ordinance. The 2015 ordinance, by the way, also referred to as the text amendment? Yes. Both the 2015 and the 2016 were text amendments. In contradistinction to the BAP amendments, which you've probably heard, where one particular piece of property is resold. This case has a couple of unusual facets to it, which I don't think that you see very often. This is the third occasion that the first district appellate court, different panels obviously, has heard the matter of the legality of this use on this property. I'm going to call the first appellate court decision Lecomte 1. Lecomte 1 was Lecomte versus the village of Burrington Hills. In that case, the appellate court, the first district, upheld the village's zoning restrictions under the 2006 ordinance, which provided for horse boarding operations in the village under the home occupation. It's basically an approach that you can do it, but your neighbors shouldn't be able to see it or hear it or experience any negative impacts from it. Let me fast forward a minute. What's the status of Lecomte 2? Is it back in the circuit court? Yes, it is, Your Honor. It's before Judge Valderrama, and we're just guessing, but we think he's waiting to act on that until after this court has ruled on this matter. Is that the litigation in which the interveners, I'll just say Lecomte, but obviously there's more than just Lecomte, are asserting that they have a vested right in the repealed ordinance? Yes, Your Honor. Why aren't you challenging the constitutionality of that ordinance? Why isn't the constitutional challenge taking place in that case? Because that case is brought under the 2006 ordinance, the home occupation ordinance, where Jim Drury and... No, I understand, but in the midst of that litigation, it sounds like the interveners are saying that no matter what happens, we continue to have the right to do it. They're still doing it, right? As of this day, they're still operating the... For 12 years, Your Honor, since 2006. I understand, but why isn't this separate lawsuit taking place, challenging the constitutionality? Why isn't it taking place in the case before Judge Valderrama? Because of the claim of vested rights, legal right in foreign use, that Mr. Lecomte is relying upon by virtue of the retroactivity provision in the 2015 ordinance. He's claiming that because the retroactivity provision extended back at the time 8 1⁄2 years, that he has vested rights in that ordinance. So, that motion was, that argument was first raised, we brought it up to the trial court judge, and it's in the plea, it's in the record here, that that's what he's relying upon. And so, the 2016 ordinance isn't at issue. Yeah, but you could amend the complaint. You could amend the complaint. I'm just wondering why you filed a separate lawsuit to challenge the constitutionality. Well, the timing was such that the concern is, is that the 2015 ordinance would give him vested rights, legal right in foreign use status, and that we needed to attack and seek a judgment that that ordinance was void of in issue for the week. Yeah, no, I get that. I'm just saying, why here? Why not in front of Judge Valderrama? The sequence of events has been such that this case has proceeded, and if we were to dismiss this case, that would be deemed, if we would have accepted Judge Atkins' decision, there would be a judgment on the attack on the 2015 ordinance, and that's the pickle that we're in. But it's, it would be interesting for the court to observe on whether or not that 2015 ordinance could also be raised in Le Compte 2. So, it seems pretty clear that you're familiar with what happened in Le Compte 1. The horse boarding regulations, the home occupation was held to be a valid restriction. In Le Compte 2, there was this claim that he now is qualified as a home occupation, and I thought that the first district in Le Compte 2 had some pretty strong language about what kind of arguments were being made by Mr. Le Compte to defeat Mr. Drury's 11-13-15 Adjoining Property Owners Act in that matter. And using the Sheehan letter, which is sort of a term of art, but basically saying, changing the hours of operation, and now claiming, after you had claimed for so many years you're not a home occupation, just wasn't going to sit. So that case... This is a facial challenge to a municipal ordinance. What is what Le Compte did or didn't do in another piece of litigation with some purported letter? What does that have to do with whether this ordinance is constitutional? Because in my mind, Your Honor, it indicates a continuing course of conduct to manipulate the system. Why does that matter? I'm sorry. I'm sorry. No, that's Le Compte's alleged course of conduct. We're here looking at the constitutionality of this particular ordinance, whether it is facially sound. That puts us in a particular box to determine whether the ordinance is rationally related to any particular, to a reasonable purpose. So Le Compte's conduct aside, that's the issue du jour. Perfectly. Okay, so what we're dealing with here is zoning restrictions. It's sort of homegrown zoning law. Fundamental principles that you can't pass a zoning law to benefit an individual. It's a police power regulation, and it has to be adopted for the purposes of promoting the public health, safety, and welfare. And we are turning back to Le Compte I and Le Compte II to show a history that when you connect the dots from when the appellate court in Le Compte II ruled against Le Compte and reinstated the complaint, very shortly thereafter Mr. Le Compte initiated a text amendment with this retroactivity provision in it, which then ultimately became the 2015 ordinance that contains the retroactivity, which removes all the protections and restrictions that were granted to joint property owners, which gives great rights to commercial horse boarding operations. It no longer requires that a horse boarding operation in Barrington Hills be subservient, less than the principal use. It emasculates all of the setback requirements so that these horse stables can be built right on the border. It eliminates the requirement for a building permit. Our complaint goes into meticulous detail about that. So the reason why this is a facial challenge to this attack is because this ordinance, we believe on a motion to dismiss, it should not have been dismissed on a motion to dismiss because we have supplied sufficient facts to demonstrate or plead that this ordinance was adopted for the benefit of one individual. So let's talk about what we can consider in a 2-6-15, or really just period, when it comes to the constitutionality of an ordinance. You've talked about a lot of things in your complaint, I agree. You've talked about Le Compte 1, Le Compte 2. You've talked about campaign contributions. What can we take into account when we're considering a facial challenge to an ordinance? Can we look at whether somebody gave campaign contributions to one of the people who voted on the ordinance? If you go back to Forest View and you look at the presumptions of validity that are given to a municipal enactment like you would be prone to give, or the trial court would be prone to give to this 2-6-15 ordinance, I believe that the taint of who voted for this ordinance, the taint of how the timing has worked from the decision in Le Compte 2 to the adoption of a text amendment, the timing of when Judge Adkins issued his opinion to the claim in the circuit court before Judge Valderrama that I now have vested rights and you, Drury, can't enforce the 2-0-6 restrictions. You, the village of Bury the Hills... Because, yes... Okay, so let's look at Continental Medicine, which talks about retroactivity and what are the standards that a court is to look at when there's a constitutional challenge to a retroactivity provision? That's a very different... That's different. But with respect to, I'm just going to call it the major components of the ordinance, which gives Le Compte the right to conduct his home business. Tell us how, just using the standard test for evaluating the constitutionality of an ordinance, tell us what, just utilizing that test, we can hang our hats on to determine whether or not the ordinance is related to a legitimate government purpose. So, the fundamental rules are the rules announced in LaSalle National Bank v. the County of Cook that are affectionately referred to as the LaSalle Factors. And we have made a LaSalle Factors claim, including our affidavits, that such a use is inconsistent with the surrounding land uses and zonings. Such a use depreciates our property. Such a use causes us substantial harm in 2020. That sounds almost like an as-applied challenge. LaSalle is an as-applied challenge, right? That's an as-applied challenge. We're looking at a facial challenge. The problem that we have is that when the legislature changed the law and allowed one to challenge a zoning enactment under 1113.25 of the municipal code, it basically said that you use the LaSalle Factors to judge that. It completely flipped everything around. Variations are now decided on the basis of the LaSalle Factors. So the testament in my judgment falls within that so that the LaSalle Factors are certainly relevant. But fundamentally... But counsel, aren't we limited to some kind of a legislative record when we're looking at things like this? I mean, when a state law is passed or an act of Congress is passed and a court is reviewing the constitutionality of it, they will look at the language of the legislation and they will look at the legislative history, if there's something to be gleaned from that. But we don't start going back and go, once upon a time, five years ago, here's how this all started. These people were fighting, see, and they tried to fight it in court and then we got a legislative... I mean, I'm not aware of a line of case law that says you get to just go back and start telling the story at some point. I'm trying to get my arms around what we can and can't do. So there's a lot in your complaint, but I'm not sure all of it is relevant to a constitutional challenge. I hear what you're saying about the Lecomte I and Lecomte II, but that is just a small part of the story, Your Honor. Okay. And the... First of all, there is no legislative history on this ordinance. There was no transcript taken of when the Zoning Board of Appeals decided this. There are a lot of allegations about inconsistent positions taken by the Zoning Board in terms of the as-permitted approach versus special-use approach. So you can sort of cobble together some legislative history in connection with this. But if you look, because that's what the courts are directed to do with the plain language of the statute, when you look at all the restrictions that were removed from adjoining property orders from this use, when you look at what I think is an obscene retroactivity provision, eight-and-a-half years, and when you connect the dots and see that that eight-and-a-half-year provision was designed to protect Mr. Lecomte from the lawlessness that has been going on since 2006, I think that the elements are there for this court to declare on a motion to dismiss that it was error for the trial court to dismiss this complaint and that it should proceed. So that, to me, is what this court can consider. I don't have 161 paragraphs in my complaint. I don't have a story to tell. And I wanted to be sure I did it fully and completely and ridiculously. But I believe that for the purposes, and don't forget the affidavits, in terms of the impacts that not only my clients are feeling, but that would be felt by other property owners from the village. But those affidavits are not in the legislative record, right? They weren't put before the village. They were just put in a court file, right? No. No, those affidavits were not. A testimony was presented there, but not these. So this is not just a review of the legislative record on this 2615. While you can, and I'm suggesting that there isn't a formal legislative record, this is an administrative review. You know, courts decide under 1113.25, as committed by the legislature, that it's de novo judicial review. And we've kind of struggled with what that means. But under the de novo judicial review, the courts can skip to consider not only what was presented below in a familial legislative decision, not an administrative decision, and they get to consider additional evidence. And I suggest that the story that is told in that complaint does not support the dismissal of this complaint, that it's spatially invalid. And I know my time is kind of running out. Okay, well, let me ask you this. I believe I understand that when the Zoning Board of Appeals was hearing the LaCoste Amendment the first time, it might have been the Village Board, at some point the Village Board said we have a bunch of questions about the LaCoste Amendment, right? And they listed out a bunch of questions? Yes, Your Honor. Okay, so that's in the record somewhere. That was submitted before the Board, somehow in the Boards? Yes. Yeah, okay. Right, they asked where else has this been done, what's the impact? They asked the Zoning Board to go back and identify all the information. Right, and then it goes back to the Zoning Board. A few days later, the Zoning Board passes a close facsimile of the LaCoste Amendment and sends it to the Village Board. And the Village Board hears testimony at some point, right? They do, in a public hearing, a public meeting rather than a public hearing. Okay, and that, I assume, was transcribed? I think it's minutes. Yes, there was a court report, I was there. Okay. Yeah. All right. So there is a legislative record to look at, for lack of a better term, a legislative record. Something formal within the, you know, not I overheard someone at Starbucks say something, or I looked at this guy's e-tunes and he got a campaign contribution from somebody, but there's actually a legislative record where people formally testified before the body. They weighed in on the good, the bad, the good, the bad. I'm accountable for the Zoning Board and the Village Board, yes. Okay, all right. Can I just go back, though, to that list, which you picked up on, of what the Village Board asked the Zoning Board to do? And the Zoning Board didn't get any of the information that the Village Board asked. No, I understand. And the witnesses that they presented, if you're familiar with that, they said this eight-and-a-half-year retroactivity is unprecedented. The planning witness, they said, said I would have to study this and see what the impacts are of the retroactivity and an as-permitted-as-a-voter-of-right approach versus a special or conditional use approach. None of that occurred at the Zoning Board. Instead, we had an effort to get two hearings in a row, one to hear evidence and then two to vote on it. So, in closing, and I'll be back on rebuttal, I just want to focus on the factors of course to consider, because remember embedded in this ordinance and central to this ordinance is this eight-and-a-half-year retroactivity, which we say, which we've alleged Mr. LeConte is relying upon to claim a legal nonconforming use status to blunt Mr. Drury's case in LeConte II and to blunt the village from enforcing its ordinances. That that ordinance, when you look at common law medicine and you look at retroactivity, that you look at the reliance and we are the Soviet in our papers, that Mr. Drury relied on a cease-and-desist order, which the village issued in 2006. I'm going to talk about LeConte I and LeConte II. And basically the rule of law that a law is not going to be changed unless it promotes the public good. We have alleged sufficient facts in our complaint to claim that this law does not promote the public good. This comment also directs us to look at the length of time that the retroactivity is in effect. I don't know if eight-and-a-half years really speaks for itself. That case isn't talking about the constitutionality of a retroactive provision. It is. I thought it was talking about whether it was retroactive. It looks at when there's a constitutional attack on a retroactivity provision. What is the court to look at? Okay. And finally, the trial court, do you want me to stop? I thought you were supposed to stop. Well, on that issue, yes. Were you also going to address the settlement? Mr. Bond, because I know I've got a little bit of amount of time, and you're very curious. So he's going to talk about it, but I'll pick it up by rebuttal. And let me just remind you of Justice Shostak's opinion in the Ogle County case. And I think that, in my view, the trial court judge gave a she-put-it-tell-us-man-to-the-fact effect to this anti-plague-versus-facial attack. And what we're saying is this. Fundamentally, as she recognized, this is an attack on the reasonableness of a police power regulation. And to have it the intervener's way is to deny the avalanche a day in court to prove that this ordinance is facially invalid. So with that, I'll rest, and I'll see you in the last five minutes. Thank you for your interest. Mr. Bond? May it please the clerks and counsel, I'm in a unique position. I've sat at a few tables in regard to that. The position of those and the issues that those focuses on is that as a home of Illinois municipality, the courts are familiar with the long history of commercial horse boarding and the sequestering community. And this case was filed soon in the village in a challenge to the amendment in zoning code to allow large-scale commercial horse boarding and seeking injunctive relief. What the village board did in response to that is assess the complaint. And then they went forward to get public input. They scheduled public hearings. There were a number of people who came to the meetings. They were sought out. Notice was given, published on the website. Everyone was given an opportunity to come to the public hearing, which notice was provided in the newspaper. On the website, a mail notice was given to anyone who was interested. Also those who were the interveners to the action as well. Was the notice specific to say notice to amend the ordinance or was the notice more specific to notice to present or hear evidence or information about a settlement agreement? What was the format of the notice? The notice was intended to get the input of the public. What was the substance? Was that settlement? It did not say to amend the ordinance? No. Again, it wasn't the position. Well, because at the time the notice went out, the village board had an assertive position whether they were going to settle the case. And if so, what the terms were. Were the terms going to be to seek to tweak the ordinance? Was the settlement going to be to determine that the ordinance was not consistent with the character? What then was the expectation or what was anticipated to occur at the public hearing if the board wasn't at that point even certain of what it was seeking to do? Well, the village board was aware of the fact that commercial horse breeding had been a Comp 1, 2, maybe 3, 4. There was significant litigation involving it, significant public comment, public discussion relative to this at the village board meetings, at the VBA. So the village was aware of the fact that there were parties on both sides and some were just interested to find out what was going on. There was some small residential commercial horse breeding that were afraid that that would be eliminated. So what the village wanted to do was to get everyone's input relative to the possibility of revisiting this commercial horse breeding ordinance. This was an ordinance that the village president had vetoed. That veto was overridden by the village board. So this was a legislative enactment that the village board, simply there was a split on the village board but a number of the members of the village board did not believe that that was supported by the residential character of the community, did not take into consideration the traffic impact of a large commercial horse breeding facility. So the board wanted to take a look at this and the litigation that the village board had contemplated would be an incident requesting information for the VBA to explore and so forth. The timeline was advanced by the filing of the lawsuit. The lawsuit was filed when the village board advanced the contemplation discussion of this particular ordinance and whether or not this ordinance was consistent with the residential nature of the community, whether it took into consideration public health, safety, and welfare. In fact, Mr. Bond, can I interrupt you? Does the village, does any village have the right to agree that one of its ordinances is unconstitutional and have a circuit judge put his or her stamp of approval on that? I think as a legislative body, I think they could make that determination. They'd have to make the specific findings relative to that, to the previous proclamation. Otherwise you couldn't, whether it's unconstitutional or invalid, otherwise you would simply handcuff the unit's government. A village board city would not be able to alter course. And if there's circumstances of that, they could repeal the law that they think is a bad law. But can they be sued in court and then step up in front of a judge and agree with the plaintiff that the law is unconstitutional and say, here judge, sign this order, we agree it's unconstitutional. Have you ever heard that happen? I have not. I haven't either. Is there any case that you know of that says that that's something that can be done? No, but the village does have the authority to do it, which they did, and they did it as part of the settlement agreement, and they did it as part of the resolution that would approve it, because they made a determination. They didn't respond to it. But have you ever seen, in the context of a settlement agreement, the practical effect of that agreement being the actual repeal of an ordinance? I mean, aren't we bound by certain mechanisms or structures within code that tell us how and the manner in which an ordinance can be amended? I mean, have you ever seen it done in the context of a settlement agreement? Well, I think it can be done in the context of a settlement agreement, and under the circumstances we have here, the public had never been put on notice that these were being contemplated. It was never put on notice as to what the potential terms of this, the impact of the potential. Let's put the public aside. Does the village have the authority to declare one of its own laws unconstitutional? I mean, you need a judge to sign off on that, right? Correct. Which means the judge has to make an independent determination that the law is unconstitutional, doesn't he or she? That is correct. But that's not what we're doing here. I mean, if I understand this correctly, Drury and the village entered into an agreed order that this law is invalid, is unconstitutional, and said, here, judge, sign this. We agree. So it's unconstitutional. I've never heard of that. Well, that's not what the village did. The village made a point, and it specifically, in this part of the settlement, determined in the Commercial House Voting Tax Amendment, at the time of its adoption, there's no rational relation to the public policy. Right. They just set the test for unconstitutionality. But the ultimate conclusion, I believe, at the end of that paragraph is, therefore, the ordinance is invalid, which means it's unconstitutional. And that's what I don't get. I mean, it's a violation. Repeal a law, sure. You know, Justice Thompson, I can't pass a law. We can strike one down. You can pass a law, but you can't strike one down. That's what I'm not getting here. Yeah, well, the finding on that, at the end of that, was that the Commercial House Voting Tax Amendment is inconsistent with the standards contained in the village ordinance, and it's just the finding that we made. And based on that finding, the village made a determination that, with the fact that it essentially re-characterized the residential nature of the village by allowing this throughout the entire village, this large-scale commercial house voting, that it essentially was rezoning of the entire village, and that that was inconsistent with the factors that would have to be considered for that purpose. But the interveners at the table with respect to the settlement agreement Who was involved? Well, the interveners had some issues with the village as with respect to the court's order. And the court was very specific that the interveners were not privy to the settlement negotiation sessions, nor are they by statute. If the village is going to set a litigation, the meeting deck allows those discussions to be held in closed session. The discussion leading up to this, this was not done under the cover of darkness. There was a public hearing, notice given to the public, everyone had an opportunity, testimony was provided. I'm not sure I understand the substance or the nature of the notice and whether or not the interveners were aware, but you suggest that neither was the village aware at that point in time of what they intended to do with the ordinance. I'm not certain how the interveners would have known what you intended to do with the ordinance either. Well, again, what was clear in the notice was to contemplate the possibility of settling the litigation. The interveners and the members of the public were on notice. The allegations of the complaint had been filed. The release slot in the complaint was available to everyone. The public testimony and comment that was made, both at the ZBA, at the public hearing, and at the village board, was focused on don't settle the case, keep this text remembered. So it wasn't as if there were terms that were completely inconsistent with what was discussed publicly. The issue with those guys is that private parties aren't entitled to the internal discussions of the board. The debate goes on in an executive session. Well, in this event, the anticipated result would have been to settle the litigation, and at this point the interveners have been granted the right to be in the case. Is that correct? That's correct. Anybody in the public, they in fact were parties to the litigation at that point, and notwithstanding that they would ultimately have been bound by whatever disposition the court made, they were privy. They had a right to be engaged and involved in those aspects of the case, certainly if they were going to resolve and settle it. And I think that they were. They were, in fact, involved in those various aspects of the case. Again, they were set for it. The village filed an answer, and the village answered. It made certain admissions relative to the authorized building, the stables, the structures associated with the building, could exceed the size of the principal structure, and we went through. So they were on notice as to what those terms were. They were on notice as to what the remit saw, and welcome to the potential settlement. Prior to the court taking any action, the board had the discussion, had the public hearings, and then had a discussion and a debate prior to casting a vote on this where the interveners who were present could speak on the public comment under the Open Meetings Act. Sure. I don't think there's a – well, there might be a claim about the Open Meetings Act, but I'm more concerned with the Code of Civil Procedure at the moment. We've got – I believe they petitioned to intervene as of right. Correct. It doesn't really matter. Once you're in, you're in, right? If you're an intervener, you have all the same rights as any other defendant. They intervened, probably at least in part because they had the sense that maybe the village, defending the law, might not vigorously do so. Whatever – they got into the case. Once they're in, they have the right to be in the case, right? I mean, you can't – They have different rights for the defendant than you do. No, they didn't oppose the interveners. I think they could have run, though, because the village president attempted to – No, no. They have the right to defend the ordinance just as much as you do. Well, you have the right to defend the ordinance. They don't have the right to be in – none of us as plaintiffs have the right to be in an executive session discussion on whether or not we're going to settle the case, and if so, what those terms of settlement are. Maybe not. Maybe not. Look, they do have the right to say that we don't agree with this and we are a defendant. Right. And they asserted that right. And why isn't that enough to defeat the settlement like that? Well, because the court's determination was that they were going to be in settlement sessions, and as a result, their interests weren't properly represented. They filed responsive pleadings. They were involved in the case. They were granted leave to be involved in the case. Their position was represented. Well, I guess it's a matter of how you look at that. I mean, I think what they would probably say is our position is that the law is valid, and yours is that it's invalid, so that's not really representing our position. That doesn't strike me as a reasonable take on how things went. How can you settle out from under another defendant like that? Because, I mean, you're taking a position that's directly adverse to what they're saying. Right. And they're in the case. They're not hoping to get in the case. They're in the case, and they just have to say, oh, well, I guess they get to settle. But to take a contrary position would be to deprive a home rule municipality from having the ability and the right to settle litigation in which it's allowed. We have cases where, I think in this regard, we have cases where multiple parties are serving. We're not talking about every case in general. We're talking about in this particular case where we have the village and we have interveners who are properly in the case. We're not talking about every case in which the village is seeking to settle an issue with, say, someone who lives within the village. We're talking only specifically about this particular case in which we have individuals who have been granted as a right to intervene in this case and whose interests, because they've intervened, are believed not to be able to be vigorously or zealously protected or advocated, which is why they're in the case. So to offer that, we wouldn't expect you to do it in every case. This isn't every case. This is just this case. Right. And I understand that. But to do so would be to vest virtually everyone with a right to engage in the legislative process and a determination as to whether or not a unit of government or a village has the, it's in their best interest or has the right to settle a case. The property owners actually disagree. Not everyone. Only those for whom there is a lawsuit in which they are involved and they've been granted the right to intervene. But to do so, any property owner believes that they're, you enact a parking, and now my relatives can't park on the street when they come over for a holiday. I'm accepted by that. I file an action against the village. And now I could be in participating in that discussion as to how the village would resolve that dispute. I mean, essentially what the court is, if the Supreme Court grants that individual leave to intervene in the lawsuit, then yeah. Yeah. They do, right? Well, they're just as much of a defendant then. Yeah. That doesn't prevent the village. Defendants can settle out the matter without the approval of other defendants. The village has a right, oppositional right. Well, where are you getting that? Who said that? We have multiple parties, and litigation in any party can set it out. They're not bound to get the agreement of the other parties for that litigation. Okay. There are some instances in which that's true. You certainly see that in court cases. You can sometimes see that in your basic commercial cases. But here you're talking about the validity of an ordinance. And one party intervenes to defend that ordinance, and the other party, the village, says, oh, no, it's unconstitutional by agreement of the parties. Sorry, and you don't get to say anything about it, even though you're in the case. That's what I don't get. Well, because you can say something about it. You can't prevent the legislative body from acting. And the order that was entered essentially prevents the legislative body from acting. Well, they can't stop you from adopting an ordinance saying, let's settle. They can't stop you from doing that. I don't think they're saying that they could stop you from that. But they can stop the settlement from happening. But that's the impact of the legislative action that was taken by the village, was the resolution approving the settlement, and then they're not allowed to be able to move forward because they don't have the agreement of the... By no reason, you're basically wiping out interventions in cases where governments are sued. Because the government would always take that position. Well, we don't need the petitioner. We can just agree to strike down something, and the intervener is out of luck. Is that what you're saying? No, I'm certainly not suggesting that. How is this case different than that? The interveners had their opportunity to present their position under sworn testimony in some instances. That information was considered, debated, discussed, some disagreed by the village, before we made the legislative proclamation that it was... I don't know why they would even have been given notice if it's your position that, so what? They can't impact, ultimately, the decision. What was the point in even giving them notice as interveners? Well, in addition, they had been granted that right by the court, so they had an interest in this particular issue, and they had a voice in the issue. The fact that the interveners disagreed with the decision that ultimately the majority of the board made shouldn't be a bar to the village's ability to resolve a dispute. I know my time is... Again, with respect to resolution, the village's position is they have a right to resolve disputes. The court knows those are a resolution of disputes between parties and state. The village contends that it was a legitimate exercise of their statutory authority, both as a municipality and even greater so as a result of it being a non-or a homely municipality. And it was an appropriate exercise, and we ask that the May 3rd court order be reversed or any alternative matter be remanded to the child court. Okay. Thank you, Mr. Bowen. I return to my neutral seat. Mr. Richard Halter, are you next? May it please the court. First, this case that we're arguing about is about a law that no longer exists. It was repealed December 7th, 2016. But it kind of lives on in your mind, doesn't it? Oh, so I actually... You're, you're, you're... Oh, well, wait a second.      Nathan Hill's Farm. Nathan Hill's Farm. Nathan Hill's Farm. Nathan Hill's Farm. Nathan Hill's Farm. That's not a comp's farm? It's not a comp's farm. It's a separate farm. The Oakwood Farm? The Oakwood Farm. Okay. So, boarding houses for non-profit organizations, the House Animal Resting Protection Society, and then Veterans R&R, which is no longer part of this because the ordinance has been repealed. Okay, fair enough. But whether you're representing a comp or not, his position is that, correct me if I'm wrong, that he can continue to operate this large-scale boarding operation on his property because of the retroactivity provision of the 2015 ordinance, which granted him infested rights. So, is it, is it, am I correct that that's his position? Respectfully, that issue is part of what comps do. And as Mr. Burney said, that case is about a 2006 ordinance. It's also a basis for the intervention of at least some of the interveners in this case, right? Of one that, there were nine different interveners. Okay, but one of them talked about vested rights in a petition to intervene, right? That's how they were able to. I don't recall that he could, yes, possibly. Okay. Okay. Well, in any event, what Drury is ultimately trying to do here is to stop Le Copte from operating this. That's the relief he really wants here. And Le Copte is taking the position that even if that law was repealed, which of course it was, he can still do it because he has vested rights. And it seems to me that the only way that, well, there's two things that Drury could do. He could argue that the vested rights argument is just wrong. Right. He could do that in front of Judge Balderrama. Or he could get the law struck down on the outset as void ab initio, in which case the vested rights argument would kind of go out the window, right? We can't erase time. So he actually, in his complaint, doesn't ask for it to be struck down as void ab initio. He specifically asks that it be declared unconstitutional. And it was still on the books until it was struck down. Okay. But if it's facially unconstitutional, it's void ab initio, right? It's as if it were never passed. And that's what he's trying to do here. He's trying to get that law erased from history so that LaCombe can't claim a vested right in it. That is what he's trying to do. So why is this case moot? Because the actual ordinance itself is gone. But we can still give effectual relief to Drury, can't we, if he's right? I don't think we're giving him the effectual. If he's right, we're striking down something that still doesn't exist. You can count me on that one. So we're still going, if he's right and the lower court dismisses Rachel Bush and he goes back to Judge Atkins in his discovery on an ordinance that does not exist? The ultimate question would be, is it facially unconstitutional? And if it's facially unconstitutional, it's void ab initio, right? It never existed. And I think that's one way he stops LaCombe from arguing vested rights. Because you can't vest rights in a law that never existed. Am I missing something? That's what I think he's trying to do here. It is our position. I really think that should be before that other case. Well, I don't necessarily disagree with you, but I don't know. Because we're kind of telling them then what to do. And it's about, I believe the ultimate issue is about attorney fees, which is an ancillary issue to that case anyways. And so I'm not sure there should be a ruling here on their case on an ordinance that doesn't exist. Okay. So you would argue, I really think it's moot. But if we're going to reach the merits, I will look at it. So first, the circuit court practically gave time for these three to settle in order for three independent reasons. First, there's an invalid legislative appeal. There has to be under Illinois statutory law and then under Illinois common law, there has to be notice and a public hearing to repeal a statute. Well, counsel says there was notice and a public hearing. Yeah. The notice actually says the board is exploring all of the villagers' options, including the possible settlement of the pending litigation. No one in here does it say it's considering repealing or amending an ordinance. It's not sufficient to do so. Then it exceeds the powers of the legislative branch. They're not allowed to strike down something without an issue. It has to be done by a court. And third, it disposes of all of the intervener's defenses, in this case, without their consent. What case law do you have that says they can't, that they need the intervener's consent? So in Willingham v. Village and Mount Prospect and in Friesen, there were cases where there were pending motions to intervene and a settlement happened before the interveners were allowed in. The court reversed and said interveners had the right to present their case and be part of the settlement discussion. Say the cases again? Yes. Willingham v. Village and Mount Prospect. Okay. You're doing your brief. That's fine. And finally, Council for the Other Interveners is going to address the facial challenge, but I do want to say a few things to correct the record. Council said it's foreign bill law that an ordinance can't find a set of individuals who don't have the correct standard under Illinois Supreme Court law for considering a facial challenge. And whether it's not just one individual or not, it still doesn't meet the rational basis standard of saying that there is no legitimate legislative purpose for the law. Second, this is, I'm sorry. Second, this is valid by the fact that there are eight other cases. But there is a paramount case law in situations where the record showed that it was an ordinance. A zoning ordinance was really just passed to help a couple people where the Supreme Court said that's not in the public welfare act. It's unconstitutional. Those are spot zoning cases or they're cases that are applied to particular properties. Here, course boarding has been debated in the Village of Fairington Hills for years. The ZBA at the time, the Village Board at the time, came up with an amendment that affected the entire village. Yeah. What is the effect of spot zoning? I don't remember seeing that phrase in any of those cases. For a few examples, it only builds a tract of land. So it changes it from R1 to R3. I'm thinking of cases like Cosmopolitan National Bank and Trust Company of Chicago and Kennedy. Are those spot zoning cases? Yes. Not R3. Two of them are. Okay. Cosmopolitan is yes. And then Trust Company. And so what is the effect of the spot zoning? How does that make the analysis different? It's like an as-applied challenge. And as people can clarify, it's less clear the difference between an as-applied and a spatial challenge moving up to Napleton. And they're trying to clarify what needs to be decided in order to bring a spatial challenge. And this is particularly difficult because what the Horseporting Act actually does, it says residential property owners can work with it subject to these regulations. I still don't get the spot zoning distinction. It's one tract of land, and so those cases are much more akin to an as-applied challenge. Much more akin? Similar. Do they say that? I mean, at least some of those cases were spatial challenges. So what is the spatial challenge, but it's about one tract of land? Cosmopolitan National Bank is one tract of land. Yeah. Okay, and that's what we mean by spot zoning. It's just focused on one tract of land. And so in those cases, I think what's going on there is the court's looking at the fact that they seem to be messing with one property owner and because the people around them wanted something a certain way. And this is definitely different. This is sort of the inverse, right? This is a case, at least if you believe the complaint, where they're saying this isn't done to hurt one person, it's done to help one person. I'm not sure that matters for constitutional purposes, unless you can tell me why it would. But those cases do stand at bottom for the principle that we need to see an interest of the public welfare in the record. And in those cases, they said, well, it looks like just a couple of neighbors didn't want an apartment building built or didn't want a funeral home down the street or didn't want, in Kennedy they were, I think it was also an apartment building. But just because a few people, if that's the only reason you have, that a few people want it that way, that's not good enough. We need to see the public. We don't see anything in the record other than it was to help a few people. And that, the factual posture might be a little bit different, but isn't that basically what they're saying here? I actually, yes. They're saying there's nothing in the public record that justifies this except the desire to help one person. Except it's spelled by other interveners and the amendment and the VBA findings on the amendment attached to the complaint, which must be considered above the complaint. But all that aside, people can still clarify that they have to prove no legitimate public purpose. They haven't said there's no legitimate public purpose in boarding horses. That's what they have to say. So they could possibly replete? And say that a village housing itself is an infraction of a license. So you're saying it's just obvious on its face. Do you, is there evidence on the record that this was done to promote the public welfare? Yeah, the VBA findings of fact that are attached to the initial complaint state that. Would you agree with me that that's a pretty charitable description of what the VBA issued? Findings of fact. Do those seem like findings of fact to you? Or do they seem like just a conclusion? I think they're what they do. I think they are what the VBA does every time they amend a zoning ordinance and that's within their power. They just say it's nationally related to public welfare? They have to list the pages. But I think it looks like it looked at those standards. There were multiple pages? There's at least two. Do you happen to have, you don't have to. Do you happen to have the record sites? I do have the record sites, yes. If it's going to take you a while, that's okay. I'll find it. I saw like a two paragraph description of the VBA findings and they didn't seem like findings of fact so much as just sort of a conclusion. It's okay. Give me a minute. It's okay. It's okay. That's okay. I mean, the village board said we have a lot of questions to answer before we should go any further on the complex amendment. And they listed all these questions. I think there were ten questions. With some subparts. And each one of them said let's consult this person for that question. Husband, hurry, let's talk to this person. Taxes, let's talk to an assessor. How many, you know, I can't remember all the questions. I've got it written down here somewhere. So they sent it back to the ZBA and the ZBA does nothing. Like three days later, they basically, if you believe the complaint, they just put the comp amendment in another amendment under Mr. Anderson's name. They passed it within a week. Sent it to the village board and the village board, not having gotten answers to any of those questions and having people testify openly that we can't say whether this is in the public welfare because it needs to be studied more. We haven't worked this up enough. They said that's okay. We're going to pass it anyways. I mean, that's the story the complaint tells. Right. But they didn't bring a procedural due process claim. Okay, but they don't have to bring a procedural due process claim. But to allege that there was problems with the procedure they do. Well, is that the lesson of those Supreme Court cases? I mean, one of those Supreme Court cases at least was talking about the fact that they deviated from the notice and hearing procedures. Right. I mean, the irregularities in the procedure, and coming back to the first question I think I was ever asked about this, is what can I look at and what can't I? I mean, if there was a deviation, if they failed to comply with their own rules, if they demanded, if the ZBA was supposed to do findings of fact but didn't, if they asked questions of the ZBA and didn't wait for the answers. They should have brought a procedural due process case. And they did bring a procedural due process case. But can deviation from procedures speak to whether it was in the public interest? In a substantive due process case? No. In a substantive due process case. They have to show there is no rational government purpose in regulating horse boarding. That's true. Sure. And they haven't done that. But doesn't the case law say that those procedural irregularities and how a municipality passes its ordinances, that that can't be relevant? You are correct that some of those cases look like that. Yeah. Okay. I mean, Naples and its... Those weren't procedural due process cases. They were substantive due process cases. Correct. And they're looking at it to see what purpose is the government regulating this land for. Well, they're trying to see if there was a good reason for this or whether there was maybe not such a savory reason for it, right? Right. And they have to allege the absence of a reason. I think they allege that, don't they? I don't think so. They allege that horse boarding only benefits Lecomte. Uh-huh. But they completely omit everyone else that was a beneficiary of the horse boarding amendment. They completely omit that it affects the entire village, not a tract of land, not one horse farm, not as applied to Lecomte. This is a problem. Right. And the zoning board has... A village gets to regulate how the land is used. No question about it. And it's not our job to decide whose policy is better. Our job is to decide whether they actually did have a reason, whether what they did had some relationship to the public welfare. Right. And it's not that easy to tell that sometimes. There's not a whole lot of things we can do. We can't bring in the people who voted for it and sit down with them with a cup of coffee and say, hey, why did you pass this? We can look at the face of the ordinance, including a retroactivity provision that obviously only applied to one person. Would you agree that it only applied to one person? No, it applies to all farms because of the way... Yeah, but would you agree with me that Mr. Lecomte was the only person who benefited from it? No. The retroactivity provision. Yes, because there were other horse farms operating prior to the 2015 amendment, and the way that Lecomte 2 came down made it unclear whether you put more horses in the village, so it was brought in to clarify. Let me ask you a different way. Would you agree with me that the complaint alleges that Lecomte was the only person who benefited from it? I would agree with that. Would you agree with me that in the record, in the zoning board, before the zoning board, I think it was, maybe the village board, somebody actually testified to that? Somebody testified that the only person who's going to benefit from this is Lecomte. That one person testified to that, or did everyone testify to that? Well, there were a number of people talking to the unprecedented nature of the retroactivity provision. It's a very unique provision, I will say, but I believe one person testified that Lecomte was the only person who would incur clients and would actually get relief from it. Okay, fair enough. It either says it or it doesn't. Okay. And that's the kind of stuff we can consider, right? Of course we consider those things in the legislative record, can't we? Okay. Are you taking it beyond what you were told? I'm sorry. All right, counsel. Thank you very much. Mr. Kelly, I hope we didn't stop on you too much. You have as much time as you want. Starting with retroactivity. This was clearly all of the issues crossed over each other in this case. Yeah. James Kelly for the record. May it please the Court, I represent Burial Camp, Kaplan Camp, John Piafas, Barrington Farms, and others, all from on property in the village of Barrington Hills, all from boat, board, horses, and their properties, with the exception of the Polo Club, which is a property owner within the village. With respect to the facial challenge, we just can't jump into that. I will tell you, as Mr. Burnett did, and you'll find in our papers, this has really been going on since 2006 when there was a text amendment, and it added this odd notwithstanding clause, which led to a number of issues concerning litigation, questions before the board, and a number of applications before the zoning board to the village, that residents were petitioning the village to include Mr. Drury to change the ordinance concerning boarding horses. So this has been a long-term process. With respect to the facial challenge, Your Honor, Mapleton is square on. I mean, there's absolutely no doubt about it. In these close cases, Mapleton is as close as you can get, I think, to this case. Legal issues. The plaintiff simply did not show that there's no legitimate legislative purpose for that this ordinance could be declared unconstitutional. As a matter of fact, this complaint shows all of the legitimate reasons for the case to actually be that there was a legitimate purpose. There was confusion concerning the existing horse boarding ordinance. There was hearings before the ZBA to appeal for variances. There was petitions to the ZBA to ask that the ordinance be changed. There was eventually a lawsuit between LeCount and the village. And let's just continue that. So it wasn't... What is the legislative purpose? The legislative purpose is... Well, several, Judge. The legislative purpose is, first, to clarify the law. Okay. The original law provided this very narrow explanation of horse boarding. And it said, notwithstanding... And it was in the Home Occupation Provision of the Code. It said, notwithstanding any of these other provisions above, and that's the way we read it, you can board horses on your property. I mean, that's a very simplistic argument as to what's actually in the statute. The Attorney's Court did not find that to be a vexing question, did they? Judge, there was a different case and different facts and different issues before the appellate court. But they were interpreting the same provision, right? Yes, with regard to the variance and the understanding of it as it was. And that's part of the problem. A resident like Dr. LeCount, like Mr. Pappas, who was also boarding horses in this court, earlier asked about other individuals that were boarding horses that would be not legal, not conforming, or misused. Well, Mr. Pappas and the others. So those exist. But in this case... Oh, I didn't mean to get you off. So one is to clarify the law. Okay. The other is not only to clarify the law, if you look at... I know you've looked at the 2014 ordinance, we'll call it the Texas Amendment. It changes the nature of horse boarding instead of this law that is just unclear. Okay? Just an individual sort of looking at it shouldn't have to take the appellate court to figure out what's going on. I know, but that was reason number one that it's unclear. But secondly, so we have established these specific, highly regulatory requirements to operate horse boarding. Before there were none, and now you can have hours of operation. You can have a number of specific issues dealing with when equipment can come and go, the employees on the property. Requirements to have, for example, a waste removal procedure for essentially the horse waste. In addition, the ordinance provided for if you fail to comply, essentially a nuisance provision. So that suddenly, that is the legislative purpose. You're regulating, in a formalized manner now, horse boarding. That wasn't happening before. Okay. And was there... Is there evidence in the... You know, again, for lack of a better phrase, the legislative record, the municipal record, whatever, zoning board of appeals, the village board, people testifying, people putting things in writing, people saying, this is what we need. I mean, I see from the complaint that there's... NCDA's president thought a special use was the way to go, and... That is the point. Right, and I did understand that. There are extensive, from 2006 through 2016, in the most current ordinance that was adopted by the village transcripts, of all of these proceedings. Okay. And it's not just for LeCap. It's not just for Drury. There are others. So there are, in fact, proceedings. This issue, the legitimate legislative purpose, as I stated, was that there was a controversy in the village, and that village board and that CBA looked at and came up with and developed a specific ordinance. You know, but... Okay, but how... Do we know everything we need to know about the 2015 ordinance? You know, 1419 or whatever, the one that became, that we're challenging here. So it was originally the LeCap amendment. It was debated in the zoning board. I think at some point that recommendation must have gone to the village, and the village said, we have all these questions to ask. Was there... And then it ultimately came back as the Anderson text amendment, and it became the ordinance. Is there testimony, written, oral, whatever it may be, findings, a fact, anything that supports, hey, this is why we're doing this. This is what we need to do. This is a good idea. Well, the way this village operates is the zoning board of appeals is an advisory board, and they forward this petition to the legislative board, which has a hearing, and then that board can, at the hearing or subsequently have separate meetings to discuss and deliberate. All of those records, if they were deliberated before the actual village board, and I can't represent to this report exactly what they discussed, because those would be on oral, they would be on audio records in the village. I don't believe, to my knowledge, they've been transcribed at some point. Okay. However, this isn't the village's first rodeo, to be quite blunt. They've been dealing with this issue since 2006. Right. And that sort of ties into, unless you have other questions, Your Honor. Well, I just want to go back to the legitimate government purpose, because you said that the purpose of the amendments were to clarify. So were there no substantive changes, just clarifications? There were significant substantive changes, Judge. Oh, yes, absolutely, Judge. They essentially rewrote the ordinance, and it's a completely different ordinance. They changed the ability to, for example, under the previous account, it was determined that it was not a right to work horses on agricultural property, and there was a portion in the zoning code that talked about agricultural property and what you could do, and the average citizen would have assumed, yes, I can have horses on my agricultural property. Unfortunately, the public court, under those specific facts, found something different. That was changed under the village code. So there were a number of things that were changed dealing with the regulation of horse boarding. And if you look at the village, and we've talked about this in both the appellant and the interveners, but the village itself is an equestrian community. If you can't board horses, what do you do with them? Do you move them outside? It's a 35 square mile or 30 square mile village with approximately 1,500 residence homes in that village and properties. I mean, there's actually more properties. So it's a large area. So spatially, is there a legitimate legislative purpose? Absolutely yes. Was it arbitrary? No. This has been going on since 2006 to get to the text amendment that changed it. The village, for your justice, the village, I believe, can change its mind. The village can make decisions and think legislatively to amend their ordinances. With respect to retroactivity, because that is a separate issue, I believe the Commonwealth Edison cases also square on in that case. Your honor, or justice, the court rightfully decided not really to look into that. I mean, the retroactivity provision in this case under Commonwealth Edison, they looked at the Landgraf case. Landgraf said there's two ways essentially to look at this. First, is there an express... I mean, those cases are just about whether we should interpret it as retroactive or not, right? Yes. That's not all that's constitutional. That's why I don't understand what you keep talking about. Landgraf is all about whether we interpret it as constitutional or not, right? Yes, judge. However... I think the arbitrariness... The appellant has raised the issue that you have this odd six-year or eight-year retroactivity provision. Does that make this ordinance arbitrary? I'm here to argue no, judge. First, we believe that the... They want it to go back in time. Is it arbitrary? Absolutely not. And once again, it's not arbitrary because it's looking at not the count, but who was not cited by the village for boarding horses? Does the... So he needs protection. Does the retroactivity provision, though, have to meet the same requirement as any facial challenge? Does that also have to fit... Or do we also have to have a legitimate government purpose for the retroactivity portion of the ordinance? I mean, if we're talking constitutionality, it's got to fit somewhere. If we're talking facial, we know the test for a facial challenge. So retroactivity is a piece of that. Does the retroactivity provision in the ordinance also have to satisfy a legitimate government purpose? Judge, I do not have any case law on that point. I would argue that it does. The specific retroactivity provision, as I've said,  in light of not only the ZBA, but the village board itself, is being necessary looking back in time over the previous seven or eight, nine years of litigation. Because once again, this did not happen overnight. It wasn't arbitrary. It wasn't capricious. They didn't immediately decide, oh, we're going to add a retroactivity provision. There are records going back since 2006 showing the issues arising from the 2006 ordinance. Those aren't in the complaint? Correct, Judge. Do you think that the complaint adequately alleges that there is no public interest behind this other than to do this for Mr. LaCount? Whether you think it's true or not, different question. Do you think the complaint adequately pleads that? Well, Judge, unfortunately, in these cases, we must take the facts from the complaint as true. He states, he adequately states that it is their belief, based upon numerous conclusory statements, not facts, that the adoption of the ordinance was arbitrary. However, the appellant made one interesting statement with regard to his basis for his story, as he called it. And correctly, that story needs to be told. However, part of that story, Judge, is he said how the village decision was tainted. In that case, it's really not this court's job to basically get involved in what is a political issue. In this case, if the board was tainted, there's another solution, and that occurred, an election. And those board members were moved out. Now, we don't obviously take his position as being true, but he pled those issues, that that board was tainted. They're not tainted. However, there's a solution in this court. That was the election. It was held. A new board, or at least a majority of that board, made a determination and adopted a new ordinance that effectively repealed this ordinance. Judge, I have nothing further on this. Thank you, Bernie. Thank you, Judge. Mr. Bernie? Do we have time? I do. In no particular order, and first of all, I want to thank you on behalf of Mr. Drury and Mr. Reich and Mr. O'Donnell. Both Mr. Reich and Mr. Drury are here in court today. And on their behalf, I want to thank you both and Judge Smith for the care with which you've looked at this record. It raises some very interesting issues. I'm going to go on to the thin ice part of the argument first, and I just want to go back to the settlement agreement. I've been a land use practitioner for a long time. It's all I ever did. I do some municipal law. When we try to settle litigation, because obviously the courts don't want to get mired down in all these zoning cases, we have to look for guidance. And the only guidance that I've been able to find in four years of practicing is in Martin v. Greenville and ADEX. And as I read those cases, I read them as saying, you've got to provide due process. That is the fundamental issue involved in those cases. And so Martin, they settled it without giving the people an opportunity to be heard. In ADEX, they approved all these signs without the city council holding any of the necessary hearings. So the opponents who had never got an opportunity to be heard. And I don't know of any other cases that are dealing with settlement of zoning litigation, and I admit that it is an interesting nuance because it's a legislative decision when a municipality settles a zoning case. But I don't see that the courts have ever held that this is tantamount to an amendment to a zoning ordinance, as Burrington Hills Farms says. I don't see that the courts have ever said, you follow the same laws as you would with a repeal of an ordinance. So, you know, guess what? When a municipality or a county settles a lawsuit, it's repealing the restrictions that are in place on that ground. That is the absolutely necessary predicate. The second part of this is this interesting issue. I am fascinated by this case, I've got to tell you. But when there are interveners in a lawsuit and it's a zoning case, are we going to announce a rule of law that you can't settle a zoning case when there are interveners here that don't agree with the settlement? And obviously because they intervened, they felt that their interests were different. I say to you that that order of settlement did not bar the interveners from challenging or basically asserting the validity of this ordinance. It did not dismiss them from the case. So we get this really big problem from a municipal standpoint. Are we going to announce a rule of law? Do you think the interveners would have stayed in the case and been able to defend the constitutionality of the ordinance? It's an option that they have. I agree it's a long shot. Are you sure that's an option? I mean, wasn't the settlement that the ordinance is invalid? That's the village's determination, but it's not. No, but wasn't that the settlement? It is the settlement, yes, it is the settlement, Your Honor. But that doesn't, you pointed out that Judge Adkins, the trial court, is ultimately the one who gets to decide. So these interveners were not foreclosed from the entry of that settlement order. This case would have continued on, but the interveners would have had to argue that the village's entry into the agreed order and the ordinance itself were in error and that the ordinance, the 2015 ordinance, was valid. So where does the municipality left? I'm not sure what argument the interveners would have been able to have made if they would have even attempted to bring a complaint challenging an ordinance in which there had been a settlement agreement, the practical effect of which was to render the ordinance They would have asserted in a declaratory judgment that the ordinance is valid, that the 2015 ordinance is invalid. They would have been, I agree, and I don't think this is a reason why you should just deny the entry of the order. They had a big uphill climb because you have the village that's saying that the ordinance is invalid. You have our complaint that's saying the ordinance is invalid. But the other choice, and this is the question, are you going to say that if there are interveners in a case that a municipality cannot settle it? Beerington Hills wanted... A council, a municipality can do all sorts of things, right? They can agree not to enforce something or they can agree to enforce something in a certain way. But they can't agree, especially if there's an intervener in the case, arguing to the contrary, to just settle the constitutionality of the ordinance. They could repeal the ordinance. They wouldn't have needed the intervener's permission to repeal an ordinance. But they can't agree that it's unconstitutional. They can't agree. And this is where you get... That's where the municipality meets the code of civil procedure. Right? We're not saying municipalities can't do things. They can do all kinds of things. Are you saying to me that a municipality cannot... Oh, I'm sorry. I just love to walk around. Are you saying to me that a municipality in the context of a zoning case cannot enter in an agreement finding that the ordinance that's under attack is invalid? And that's... Can you cite to me a case where that has ever happened? I didn't hear one from Mr. Bond, and I know he knows a lot about this stuff. He does. He's a very well-respected municipal attorney. And I would say that... I've never heard of it. Then I would say that if you look at Martin, if you look at ADAPT, if they had had the notice and complied with the due process requirements that there was no infirmity in them settling that case and basically declaring the restrictions in Martin invalid, that is, I think, inherent in municipal settlements. And, Your Honor, I think that there's two cases in our jurisprudence about settling zoning cases, and this one may be the third. But... All right. And then I just want to respond very quickly. There was a comment made by Mr. Lecomte's attorney that this ordinance of... I forget how he put it. It added new restrictions on commercial horseboarding. And let's just back up a second. We agree Burrington Hills is an equestrian horseboarding community, and we agree that you can conduct horseboarding on your ground. And we agree, and we agree with Justice Ellis, that there is no confusion about what the 2006 ordinance said. It's been before the appellate court on two instances, and nobody had a problem. What Mr. Lecomte's confusion is that he didn't agree with the interpretations that this court has set on that ordinance. But I'm not going to read them all because you're very familiar. But if you start at paragraph 95 through 105 of our complaint, you will see all of the harms to the protections to adjoining property owners that this ordinance has wreaked on adjoining property owners. So with that, I just... Mr. Drury, who's been engaged in this 12-year effort to bring Mr. Lecomte into the rule of law, I implore you to, for once and for all, reinstate this... First of all, I would ask you to enter into the settlement agreement. And if the interveners then want to challenge in a declaratory judgment the validity of this ordinance, they can. I know you disagree with me. Or second, to reinstate this case and ask the trial court to reinstate it because this case is at moot. Mr. Lecomte continues to try to hide behind the retroactivity provisions, which is, Your Honor, is also... Is there a constitutional basis for that? And I say that there is none. And I also remind you that Mr. Lecomte's attorney was really unable to come up with any other basis in the public welfare for justifying this. So therefore, as much as I respect Judge Atkins, I suggest that he was an error here. And thank you for all the time, an hour and a half for an argument. Well, thank you, Counsel. Thank all of you. The briefs were excellent. The oral presentation was excellent. This is a very challenging case. We appreciate all of your time and effort. And we will take it under advisement and hopefully be issuing an opinion relatively soon. We will stand adjourned. Thank you.